**12-4688-cv; 13-0918-cv**
*Moll v. Telesector Resources Group, Inc.*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2013

ARGUED: OCTOBER 29, 2013
DECIDED: JULY 24, 2014

Nos. 12-4688-cv, 13-0918-cv

CINDY MOLL,
*Plaintiff-Counter-Defendant-Appellant,*

*v.*

TELESECTOR RESOURCES GROUP, INC., DBA VERIZON SERVICES GROUP,
AKA VERIZON NEW YORK INC.,
*Defendant-Counter-Claimant-Appellee.*

————

Before: WALKER, CABRANES, and PARKER, *Circuit Judges.*

————

Cindy Moll ("Moll") appeals from the decisions of the United States District Court for the Western District of New York, William M. Skretny, *J.*, granting in part Verizon's motion to dismiss and motion for summary judgment, and denying Moll's motion to compel production of documents.

Moll alleges that Verizon discriminated against her, subjected her to a sexually hostile work environment, retaliated against her for complaints of discrimination and harassment and paid her less than her male colleagues for equal work. The district court concluded that Moll premised her hostile work environment claim on only the allegations that were sexually offensive. And because Moll did not allege any "sexually offensive acts" within the applicable statute of limitations, it dismissed her hostile work environment claims. The district court erred when it refused to consider all allegations in the Complaint in their totality, including those that were not sexually offensive in nature. Sex-based hostile work environment claims may be supported by facially sex-neutral incidents and "sexually offensive" acts may be facially sex-neutral. *See Alfano v. Costello*, 294 F.3d 365, 375 (2d Cir. 2002). We therefore VACATE the judgment of the district court insofar as it granted in part Verizon's motion to dismiss.

We also find that the district court erred when it denied Moll's motion to compel documents related to Verizon's Reduction in Force events and, therefore, order the district court to compel production of such documents. Accordingly, we VACATE the judgment of the

district court insofar as it granted in part Verizon's motion for summary judgment.

In addition, we conclude that the district court erred when it disregarded a witness's affidavit because it contradicted the witness's prior deposition testimony. Although a party cannot create a material issue of fact to defeat a motion for summary judgment simply contradicting his earlier testimony, the "sham issue of fact" doctrine does not mandate that the court disregard a non-party witness's subsequent testimony when it conflicts with the non-party witness's prior statement. We thus VACATE the judgment of the district court insofar as it granted in part Verizon's motion for summary judgment.

We remand for further proceedings consistent with this opinion.

———

> JOSEPHINE A. GRECO (Duane D. Schoonmaker, *on the brief*), Greco Trapp, PLLC, Buffalo, NY, *for Plaintiff-Appellant*.

> JAMES S. URBAN, Jones Day, Pittsburgh, PA, *for Defendant-Appellee.*

———

JOHN M. WALKER, JR., *Circuit Judge*:

Cindy Moll ("Moll") appeals from the decisions of the United States District Court for the Western District of New York, William M. Skretny, *J.*, granting in part Verizon's motion to dismiss and motion for summary judgment, and denying Moll's motion to compel production of documents.

Moll alleges that Verizon discriminated against her, subjected her to a sexually hostile work environment, retaliated against her for complaints of discrimination and harassment, and paid her less than her male colleagues for equal work. The district court concluded that Moll premised her hostile work environment claim on only the allegations that were sexually offensive. And because Moll did not allege any "sexually offensive acts" within the applicable statute of limitations, it dismissed her hostile work environment claims. The district court erred when it refused to consider all allegations in the Complaint in their totality, including those that were not sexually offensive in nature. Sex-based hostile work environment claims may be supported by facially sex-neutral incidents and "sexually offensive" acts may be facially sex-neutral. *See Alfano v. Costello*, 294 F.3d 365, 375 (2d Cir. 2002). We therefore VACATE the judgment of

the district court insofar as it granted in part Verizon's motion to dismiss.

We also find that the district court abused its discretion when it denied Moll's motion to compel documents related to Verizon's Reduction in Force events and, therefore, order the district court to compel production of such documents. Accordingly, we VACATE the judgment of the district court insofar as it granted in part Verizon's motion for summary judgment.

In addition, we conclude that the district court erred when it refused to consider a witness's statements in an affidavit that contradicted prior deposition testimony. Although a party cannot create a material issue of fact to defeat a motion for summary judgment by simply contradicting his earlier testimony, the "sham issue of fact" doctrine does not mandate that the court disregard a non-party witness's subsequent testimony when it conflicts with the non-party witness's prior statement. We thus VACATE the judgment of the district court insofar as it granted in part Verizon's motion for summary judgment.

We remand for further proceedings consistent with this opinion.

**BACKGROUND**

Moll's story begins in 1997 when Telesector Resources Group, Inc.[1] ("Verizon") promoted her from clerical employee to System Analyst/Sales Engineer in its Buffalo, New York office. Moll alleges that beginning in 1998 she was subjected to sex-based disparate treatment, a hostile work environment, and retaliation.

Moll alleges that in 1998 and 1999, Daniel Irving, a Senior Systems Analyst, left Moll three inappropriate notes. And in 1999, while they were on a business trip, Irving called her hotel room repeatedly and asked her to come to his hotel room. After Irving became her direct supervisor in March 2001, Moll alleges that he left her a note that said he thought about her when he was taking a shower. Moll also claims that Irving would not permit her to communicate with him by email or telephone; she had to see him in person. And Moll claims that throughout his tenure as her supervisor, Irving refused to have her assessed for a promotion claiming that there was a promotion freeze. However, two male colleagues were promoted during this time period.

---

[1] Telesector Resources Group, Inc. is owned 50/50 by Verizon New York Inc. and Verizon New England Inc., each of which is a wholly owned subsidiary of NYNEX Corporation. NYNEX Corporation is a wholly owned subsidiary of Verizon Communications Inc.

In March 2002, Irving placed Moll on a counseling plan based on her job performance. That year Moll was the lowest paid Sales Engineer in the Buffalo office. Moll occasionally worked at home, usually when one of her children was sick. In May 2002, however, Irving informed Moll that she could no longer work at home even though, according to Moll, her male counterparts continued to do so. Moll was denied a request to take vacation on July 5, 2002. Yet, Moll alleges, male colleagues with less tenure were granted the same vacation request. Moll also claims that she and other women in the office were excluded from work-related social events, including attending professional hockey games.

In January 2003, Christopher Gaglione became her supervisor. In July 2003, Gaglione promoted Moll to Sales Engineer II.

On September 19, 2003, Moll filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been "subjected to different terms and conditions of employment than similarly situated male employees" and a "hostile work environment." J.A. 67. Moll also complained that she had been promoted "to a lower level position than similarly situated males" and generally alleged retaliation after complaining

to Verizon management of sexual discrimination and harassment. *Id.* The EEOC issued a Notice of Right to Sue dated August 9, 2004.

On October 5, 2004, Moll filed a complaint with the district court, alleging that she had been (i) subjected to gender-disparate treatment; (ii) subjected to a sexually hostile work environment; (iii) retaliated against; and (iv) paid less than male employees, in violation of Title VII of the Civil Rights Act of 1964, § 102(a) of the Civil Rights Act of 1991, the New York State Human Rights Law ("NYSHRL"), and the Equal Pay Act ("EPA").

In December 2004, Verizon transferred the Sales Engineers in the Buffalo office to the Syracuse office, purportedly because the company wanted all of the Sales Engineers to work out of the same office as their supervisors. Moll alleged that this transfer was retaliation for her lawsuit. Verizon offered Moll three options: (1) transfer to Syracuse; (2) find a new job at Verizon; or (3) take a severance package. Moll claims she had no choice but to transfer to Syracuse because she could not find another job at Verizon and Verizon refused to give her details regarding her severance package. Moll was told that she must report to the Syracuse office when she was not in customer meetings and that she could not work from

home. Moll eventually took disability leave because of the "overwhelming stress and anxiety" she experienced.

On December 20, 2004, Verizon filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), except for a single purported incident of disparate treatment. In September 2005, the district court issued an order granting, in part, and denying, in part, the motion. The district court, *inter alia*, dismissed Moll's claims of hostile work environment in violation of Title VII and the NYSHRL on the basis that Moll failed to allege that any sexually offensive conduct occurred within the applicable statute of limitations and that therefore her hostile work environment claims were time-barred. *Moll v. Telesector Res. Grp., Inc.*, No. 04-cv-805S, 2005 WL 2405999, at *7, 12 (W.D.N.Y. Sept. 29, 2005).

In February 2006, Moll's job was transferred to Buffalo and Moll returned to work from disability leave. In February 2007, Moll's supervisor told her that there would be a Reduction in Force ("RIF") and that she would be terminated because her performance was below the performance of her peers. Moll claims that no documents or other evidence was offered to support her supervisor's conclusion that her performance was below par. On

February 7, 2007, Moll was officially terminated. On April 17, 2008, Moll filed an Amended Complaint in the district court adding the allegations that her termination and her transfer to Syracuse were retaliatory.

On August 13, 2010, Moll filed a motion to compel the production of documents relating to her retaliation claim. One request (No. 20) sought, among other things, "all documents of or concerning a reduction in force on or about February of 2007." Verizon represented that it "performed a reasonable search and has already produced all responsive documents, or has in its possession no responsive documents." The magistrate judge relied on this representation and denied Moll's request. *Moll v. Telesector Res. Grp., Inc.*, No. 04-cv-805S, 2010 WL 4642931, at *7 (W.D.N.Y. 2010).

A second request (No. 21), sought "all documents of or concerning any position, including but not limited to sales engineer a/k/a solutions engineer eliminated as a result of a reduction in force in the Buffalo, Rochester, Syracuse, or Albany offices during the period of January 2004 through the present." The magistrate judge denied this request on the basis that it was "irrelevant whether the criteria utilized for a reduction in force preceding or following the

reduction in force which terminated plaintiff was similar or distinct" and denied the motion. *Id.*

A third request (No. 5), sought all personnel files of employees who held the position of Sales Engineer in Buffalo, Rochester, or Syracuse, which she argued may be used to support her claim of sex discrimination as possible comparators. The magistrate judge denied Moll's request, finding "no basis for the disclosure of confidential personnel records of employees in other offices. *Id.* at *4. Following Moll's objections, the district court upheld this determination.

In September 2011, Verizon moved for summary judgment. On May 30, 2012, the district court granted, in part, Verizon's motion for summary judgment and dismissed all claims except that her promotion to the position of Sales Engineer II was discriminatorily delayed. *Moll v. Telesector Res. Grp., Inc.*, No. 04-cv-805S, 2012 WL 1935087 (W.D.N.Y. May 30, 2012). Moll and Verizon settled the discrete promotion-delay claim and entered into a Stipulation of Dismissal. Moll appealed the district court's 2005 ruling on Verizon's motion to dismiss, its 2010 ruling on her motion

to compel, and its 2012 ruling on Verizon's motion for summary judgment.

## DISCUSSION

**I.      Motion to Dismiss: Hostile Work Environment Claims**

We review a district court's grant of a motion to dismiss *de novo*. *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009). The district court dismissed Moll's hostile work environment claims under Title VII and the NYSHRL, finding that Moll failed to allege facts to support a claim within the applicable statute of limitations. Moll argues that the district court improperly calculated the NYSHRL statute of limitations. Moll also argues that events which occurred prior to the statute of limitations are actionable under the continuing violation exception. Finally, Moll argues that the district court erred when it failed to consider acts that were not sexually offensive in nature.

We conclude that the district court erred when it failed to consider all allegations in the Complaint in their totality, including those that were not sexually offensive in nature.

"A hostile work environment exists under Title VII where "the workplace is permeated with discriminatory intimidation, ridicule,

and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks and alteration omitted), *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013). "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Alfano*, 294 F.3d at 374 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "Facially [sex-]neutral incidents may be included . . . among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex." *Id.* at 378; *see also Raniola v. Bratton* 243 F.3d 610, 622-23 (2d Cir. 2001); *Howley v. Town of Stratford*, 217 F.3d 141, 155-56 (2d Cir. 2000).

Moll's Complaint includes both sexually overt and facially sex-neutral incidents to allege a sex-based hostile work environment. The district court should have considered all incidents in their totality—including sex-neutral incidents—before it dismissed Moll's hostile work environment claims for failure to

allege an actionable incident within the applicable statute of limitations.

On appeal, Verizon argues for the first time that Moll's hostile work environment claims also fail because her allegations are not sufficiently pervasive or severe to support an actionable claim. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). While the rule is not an absolute bar, *id.*, we choose not to address the merits of Verizon's argument.

Accordingly, we vacate the district court's decision to dismiss Moll's Title VII and NYSHRL hostile work environment claims and remand for further proceedings. We leave consideration of Moll's other arguments to the district court in the first instance and we express no views on the merits of Moll's hostile work environment claims.

**II.    Motion to Compel**

We review a district court's discovery rulings for abuse of discretion. *Wood v. FBI*, 432 F.3d 78, 82 (2d Cir. 2005); *see also In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining that the term of art

"abuse of discretion" includes errors of law, clearly erroneous assessments of the evidence, or decisions "that cannot be located within the range of permissible decisions" (internal quotation marks omitted)). Moll argues that the relevance and materiality of her request for documents relating to the February 2007 reduction in force, previous and following reductions in force, and similarly-situated Verizon employees is plain. We agree. The district court erred by refusing to compel Verizon to provide the records Moll requested in Request Nos. 5 and 21. While we are in no position to second-guess Verizon's representation that the documents Moll sought in Request No. 20 do not exist, we note that the failure to keep records of the reduction in force that resulted in Moll's termination may itself constitute evidence that the reduction in force was pretextual.

"Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." *Hollander v. Am. Cyanamid Co.* 895 F.2d 80, 84 (2d Cir. 1990). *See also id.* (concluding that discovery request that

"goes beyond the narrow confines of the [ ] facility in which [plaintiff] worked . . . is relevant" to discrimination claim). This same evidence may be used to detect retaliatory motives and unequal pay. The district court's refusal to compel Verizon to produce the requested documents deprived Moll of the opportunity to find evidence that might support her argument that Verizon's reasons for firing her were pretextual, that she was discriminated based on her sex, or that she was paid unequally.

Accordingly, we vacate the order insofar as it denied Moll's motion to compel Request Nos. 5 and 21. We remand the case to the district court with directions to compel Verizon to produce such documents.

**III.   Motion for Summary Judgment**

Because we reverse the district court's order denying  Moll's motion to compel, we vacate the summary judgment. If, following discovery, Moll is unable to establish a genuine issue of material fact suggesting Verizon discriminated or retaliated against her, the district court is free to re-consider summary judgment for Verizon.

We note, however, that the district court erred when it concluded that it "must disregard" Christopher Gaglione's sworn

statement that Moll's transfer was motivated by retaliatory intent because it contradicted his prior deposition testimony. *Moll*, 2012 WL 1935087, at *22. The district court was not required to disregard Gaglione's testimony.

In November 2005, when Gaglione was employed by Verizon, he testified at his deposition that there was a valid reason for Moll's transfer to the Syracuse office—specifically, to centralize resources in the office where Gaglione, their manager, was located. In November 2011, however, after Gaglione was fired from Verizon, he stated in a declaration that "[t]he primary factor for [the] decision [to transfer Moll] was an effort to retaliate against . . . [her] for [her] continuing complaints of discrimination and retaliation." He went on to say that Verizon "justified this transfer with the pretext that all [System Engineers] . . . should work together." The district court determined that it "must disregard" Gaglione's second statement "because it contradicts his prior deposition testimony." *Id*. We conclude that this was error.

The "sham issue of fact" doctrine "prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." *In re Fosamax*

*Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (per curiam) (emphasis supplied). *See also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony."); *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."). The purpose of the doctrine is clear: "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969). Thus, factual issues that a party creates by filing an affidavit crafted to oppose a summary judgment motion that contradicts that party's prior testimony are not "genuine" issues for trial. *Id.*

Here, however, Gaglione was not a party to the action, nor did he have a familial or other close relationship with the plaintiff that suggests Moll could influence Gaglione's testimony. Moreover, there is nothing in the record to suggest that Gaglione submitted the declaration solely to create a genuine issue of fact. Therefore the district court was not *required* to disregard Gaglione's second sworn statement.

In certain circumstance we have held that sham issue of fact doctrine applies to third-party witnesses, particularly expert witnesses. *See Fosamax*, 707 F.3d at 193 (holding that the sham affidavit doctrine applies to stop a party from manufacturing a factual dispute by submitting testimony from an expert whom she tendered); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 736 (2d Cir. 2010) (holding that plaintiffs' expert report that contradicted plaintiff's prior representations was insufficient to defeat motion for summary judgment). But in doing so we explained that a party cannot "manufactur[e] a factual dispute by submitting testimony from an expert whom she tendered" with contradictions that are, *inter alia*, "unequivocal and inescapable," and "unexplained." *Fosamax*, 707 F.3d at 194.

Apart from not being a party to the action, Gaglione was not an expert nor was he retained in any way by the plaintiff.[2] Nor are we convinced that his affidavit "inescapably and unequivocally" contradicted his earlier testimony without explanation. To the contrary, there is a readily apparent, plausible explanation for any inconsistency in his testimony: At the time of his earlier deposition Gaglione was employed by Verizon; when he provided his subsequent declaration Verizon had terminated him. The fact that the later declaration was more favorable to Moll could be explained in one of two ways: either he felt inhibited at the time of the first deposition from portraying his employer in a bad light, or when he issued his later declaration he wanted to get even with Verizon for terminating him. Gaglione states in his later declaration that he "regret[s] that [he] failed to do more to complain about the retaliatory nature of the plan" because he "was more concerned about losing [his] job." It seems to us that the veracity of the witness in these circumstances presents a quintessential question of fact for the fact-finder.

---

[2] Although the fact that Gaglione was a non-expert witness bears on our decision here, we do not hold that non-expert third-party witnesses can never be subject to the sham affidavit rule.

Ordinarily, when a district court is asked to consider contradictory deposition testimony of a fact witness at summary judgment, "a district court may not discredit a witness's deposition testimony . . . because the assessment of a witness's credibility is a function reserved for the jury." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010). It was error for the district court to categorically refuse to consider Gaglione's subsequent declaration; the sham issue doctrine does not go so far. If defendant files a second motion for summary judgment, we direct the district court to consider Gaglione's second sworn statement in his declaration.

## CONCLUSION

For the reasons set forth above, we (1) vacate the district court's 2005 decision granting Verizon's motion to dismiss Moll's hostile work environment claims; (2) vacate the district court's 2010 ruling on Moll's motion to compel Request Nos. 5 and 21; and (3) vacate the district court's 2012 decision granting in part Verizon's motion for summary judgment. We remand for further proceedings consistent with this opinion.